An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA26-186

Filed 5 August 2026

Mecklenburg County, Nos. 22JA000557-590, 22JA000558-590

IN THE MATTER OF:

M.S., T.O.

Appeal by Respondent-Father from order entered 5 November 2025 by Judge C. Renee Little in Mecklenburg County District Court. Heard in the Court of Appeals 21 July 2026.

> *Garron T. Michael, for respondent-appellant father.*
>
> *Mecklenburg County Attorney's Office, by Senior Associate Attorney Kristina A. Graham, for petitioner-appellee Mecklenburg County Department of Social Services Youth and Family Services Division.*
>
> *Alston & Bird, LLP, by Matthew P. McGuire, for guardian ad litem.*

FLOOD, Judge.

Father appeals from the trial court's order terminating his parental rights. On appeal, Father argues the trial court made several findings of fact that were unsupported by the evidence and erroneously concluded his children were neglected based on his incarceration. Upon careful review, we affirm.

## I. **Factual and Procedural Background**

This appeal arises from an order of the trial court terminating the parental rights of Father and Mother, the latter of whom is not a party to this appeal. The order's uncontested findings indicated that, during the August 2023 disposition hearing, the trial court "found that the problems which led to the [a]djudication that must be resolved . . . included but were not necessarily limited to substance use, domestic violence, and housing instability." To that end, the trial court created a case plan that, in relevant part, required Father to "maintain safe, stable, and appropriate housing"; refrain from substance use and complete a substance abuse program; and take classes to "identify the cycles of domestic violence and how the impact of domestic violence exposure can affect the social, emotional, and physical well-being of himself and his children."

Father was arrested on 16 September 2023 and has been incarcerated since that time. He is currently serving a twenty-year sentence. In the order terminating Father's parental rights, the trial court made several findings expressing that, although Father had taken steps while incarcerated to take courses to improve his lifestyle and parenting upon completing his sentence, his incarceration made it both impossible for him to create a stable living environment for his children and difficult to verify whether he had improved upon his prior behaviors involving domestic violence and substance abuse. Accordingly, the trial court determined the children were neglected and that there was a high probability that neglect would be repeated by virtue of Father's sentence length.

The trial court subsequently terminated Father's parental rights, and Father timely appealed.

## II. **Jurisdiction**

This Court has jurisdiction to review this appeal from a final judgment of a district court pursuant to N.C.G.S. §§ 7A-27(b) and 7B-1001(a)(7) (2023).

## III. **Analysis**

Father argues on appeal that the trial court erred in its factfinding and its determination that he neglected his minor children. We disagree. Our appellate courts

> review[] a trial court's adjudication of the existence of grounds to terminate parental rights in order to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law. All findings of fact which are not challenged by a respondent are binding on appeal. The trial court's conclusions of law are reviewable de novo on appeal.

*In re G.B.*, 377 N.C. 106, 111 (2021) (internal citations and quotation marks omitted).

Father challenges Findings of Fact 50, 53, and 56 collectively on the basis that each finding indicates he failed to make reasonable progress on his case plan, which he alleges was a characterization unsupported by the evidence.[1] While Father

---

[1] Father also challenges Findings of Fact 51, 55, 57 and 60 on the basis that they are actually conclusions of law and were therefore erroneously categorized as findings of fact. When such miscategorization occurs, however, the proper response on appeal is to simply evaluate the challenged findings as though they had been properly labeled conclusions of law. *In re K.J.M.*, 288 N.C. App. 332, 341–42 (2023). As Father does not challenge—nor do we discern—any basis on which these

presents his challenges to these findings as separate contentions that they lack evidentiary support and reflect an improper legal conclusion of neglect, nearly all of Father's contentions collapse into the single argument that the trial court erred in considering his incarceration as a factor when terminating his parental rights. The challenged findings state, in relevant part, the following:

> 50. Despite the parents' classes they have taken and the progress they have made, the [c]ourt at the most recent hearing found that the parents had not made adequate progress within a reasonable amount of time[.] . . . [Father] was not making adequate progress at the last hearing and has not made adequate progress in addressing his reunification plan for the purposes of this termination proceeding. Although he did complete several courses while incarcerated, he is not making adequate in alleviating the needs based on the competent testimony of [Father's case manager]. [Father] cannot truly engage in substance abuse treatment until closer to time for parole and he is serving a 20-year sentence in a prison that will not house children.
>
> . . . .
>
> 53. . . . [A]t this termination proceeding both parents are farther away when it comes to reunifying with their children than when they began their involvement with the court in 2022. [Father] is 20 years away based on his prison sentence . . . .
>
> . . . .
>
> 56. Neither of the parents have ameliorated the issues which led to the juveniles entering [Petitioner's] custody.

---

inappropriately labeled conclusions were otherwise erroneous, we devote no further discussion to them and note that we will not consider them findings of fact in the forthcoming analysis for purposes of determining whether the trial court's conclusions of law were supported. *In re G.B.*, 377 N.C. at 111.

Father specifically contends that these findings were unsupported because, although he is currently incarcerated, "the evidence before the trial court showed that he engaged in various programs and educational classes to put himself in the best possible position to parent his children upon his release from custody[,]" which included completing "at least eleven different [parenting] classes[,]" completing classes on anger management and trauma, obtaining employment to pay for calls to the children while incarcerated, and severing his relationship with Mother. Father argues that, together with the fact that the petitioner "presented no evidence that Father was actively using[] or had recently used any form of illegal substances" and "there was no evidence that the removal conditions specifically remained a barrier to Father being able to parent his children at the time of the termination hearing[,]" the challenged findings were unsupported. He also argues the trial court could not evaluate his case plan progress by the standards of a person who was not incarcerated because, "by the time Father was formally court ordered to comply with his Out of Home Family Services Agreement, he was already incarcerated[2] and therefore limited in his ability to complete all components of his case plan."

In his challenge to the legal conclusion that he neglected his children, Father also argues extensively that the trial court impermissibly considered his incarcerated

---

[2] Father contends he was incarcerated for five days when the trial court committed his case plan to writing, though the areas of the Record he cites for this contention do not reflect a clear date when his incarceration began.

status when determining his children were neglected. These arguments, in essence, collapse into a single challenge to the trial court's methodology: Father argues the trial court could not use his incarceration as a basis to find as a fact that he had failed to make progress on his case plan because he had technically been incarcerated at the time the order identifying his case plan was reduced to writing, and it could not permissibly consider his incarcerated status when determining whether the children were neglected as a matter of law.

We disagree. The Record reflects that Father's case plan required primarily that he create a stable living environment for his children, seek treatment for substance abuse, and demonstrate he understood the negative impact of domestic violence on his children. While the trial court's order terminating Father's parental rights reflected an appropriate cognizance of the efforts he made to improve his parenting while incarcerated, it also accounted for the practical reality that any efforts to improve issues relating to substance abuse and domestic violence while incarcerated cannot translate into a demonstrated impact on his children's daily life until he has served his prison sentence. Moreover, there is no meaningful contention that Father could provide a stable living environment for his children while serving a sentence that will last until they reach the age of majority.

Although it is true that the *mere* fact of a parent's incarceration cannot serve as a basis for the termination of his or her parental rights, orders terminating parental rights on the basis of the length of, and circumstances behind, a parent's

incarceration are valid:

> A parent's incarceration may be relevant to the determination of whether parental rights should be terminated, but our precedents are quite clear—and remain in full force—that incarceration, standing alone, is neither a sword nor a shield in a termination of parental rights decision. Thus, [the] respondent's incarceration, by itself, cannot serve as clear, cogent, and convincing evidence of neglect. Instead, the extent to which a parent's incarceration . . . support[s] a finding of neglect depends upon an analysis of the relevant facts and circumstances, including the length of the parent's incarceration.

*In re B.E.*, 381 N.C. 726, 737–38 (2022) (citing *In re K.N.*, 373 N.C. 274, 282–83 (2020)). Among the factors attending incarceration that may serve as the basis for affirming an order terminating parental rights is the fact that the parent's incarceration will last until the child reaches the age of majority. *In re J.S.*, 377 N.C. 73, 79–80 (2021) ("[A]t the time of the termination hearing it was reasonable for the trial court to expect that [the] respondent will likely be incarcerated for twenty-eight years, until well past the time his children reach majority. This lengthy incarceration implicates a future likelihood of neglect, as [the] respondent cannot provide 'proper care, supervision, or discipline' while he is incarcerated[.]" (quoting N.C.G.S. § 7B-101(15)). Such are the circumstances here; Father will likely be incarcerated for twenty years in a location where he cannot provide stable housing for his children. In view of this fact, the trial court permissibly determined that Father was "farther away [from] reunifying with [his] children than when [he] began [his] involvement with the court in 2022" and terminated his parental rights accordingly.

Finally, as to the contention that Father could only be expected to progress on his case plan within the parameters of his already being incarcerated because the written adjudication order was entered five days after he began serving his sentence, he has not directed us to any authority establishing that the date of the entry of the written order limits the scope of the trial court's order when considering his case plan progress when he had already been made aware of the expectations reflected therein.

## IV. <u>Conclusion</u>

The trial court did not improperly consider Father's incarcerated status when terminating his parental rights, and Father has not otherwise established any basis on which the order was defective. The order terminating Father's parental rights is therefore affirmed.

AFFIRMED.

Judges ZACHARY and CARPENTER concur.

Report per Rule 30(e).